UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-14045-Civ-MARTINEZ
MAGISTRATE JUDGE P.A. WHITE

WILBUR RUDOLPH,                          :

          Petitioner,                    :

v.                                       :          REPORT OF
                                                    MAGISTRATE JUDGE
JAMES A. McNEIL,[1]                      :

          Respondent.                    :
_____

I. Introduction

Wilbur Rudolph, a state prisoner currently confined in Moore Haven Correctional Facility at Moore Haven, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 in this Court, attacking the constitutionality of his convictions entered in Case No. 02-00950 in the Circuit Court of the Tenth Judicial Circuit of Florida at Highlands County.[2]

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition, the Court has the petitioner's response to an order regarding the limitations period with attached exhibits, the respondent's response to an order to

_____

[1]Rudolph is confined in the Florida Department of Corrections. Accordingly, Walter A. McNeil, the Secretary of the Florida Department of Corrections, is the proper respondent in this proceeding.

[2]Rudolph initially filed this federal Petition for Writ of Habeas Corpus in the United States District Court for the Middle District of Florida, Tampa Division. The case was subsequently transferred to this Court on January 29, 2008.

show cause with multiple exhibits, and the petitioner's reply.

## II. <u>Claims</u>

Rudolph raises the following claims:

1.    He received ineffective assistance of trial counsel,
      because his lawyer failed to object to inadmissible
      hearsay evidence and he elicited inadmissible hearsay
      evidence.

2.    He received ineffective assistance of trial counsel,
      because his lawyer failed to call four material
      witnesses to testify at trial.

3.    He received ineffective assistance of trial counsel,
      because his lawyer failed to conduct an adequate
      investigation into the facts of the case which
      investigation would have revealed evidence and
      witnesses.

4.    The trial court erred when it permitted an out-of-court
      statement by a witness that Rudolph had stolen a fishing
      rod, because there was no predicate laid that the
      witness had personal knowledge about the matter.

## III. <u>Procedural History</u>

Rudolph was charged by Amended Information with the offenses
of burglary of a conveyance (Count 1), grand theft (Count 2), and
dealing in stolen property (Count 3). (Record on Direct Appeal at
22-3)(DE# 14). Rudolph entered pleas of not guilty to the crimes
charged, and the case proceeded to trial before a jury where he was
found not guilty of Counts 1 and 2, but guilty of the offense
charged in Count 3. <u>Id</u>. at 36. Rudolph was adjudicated guilty of
dealing in stolen property and he was sentenced as an habitual
felony offender to a fifteen-year term of imprisonment to be
followed by a five-year term of probation. <u>Id</u>. at 36-40. After
appointed appellate counsel filed a timely notice of appeal from
the conviction, counsel filed a memorandum brief pursuant to <u>Anders
v. California</u>, 386 U.S. 738 (1967) in which counsel thoroughly
outlined the evidence admitted at trial and raised one point for

reversal not related to this federal proceeding.[3] (DE# 14; Ex. 1). Although Rudolph was permitted to file a statement of points as grounds in support of the appeal, he chose not to do so. (DE# 14; Ex. 3). The Florida appellate court *per curiam* affirmed the conviction in a decision without written opinion. (DE# 14; Ex. 4). See also Rudolph v. State, 892 So. 2d 487 (Fla. 2 DCA 2004)(table).

Before the mandate issued in the direct appeal proceeding, Rudolph returned to the trial court to pursue postconviction proceedings. He first filed a pro se motion to correct illegal sentence pursuant to Fla.R.Crim.P. 3.800(a), challenging his habitual offender sentence as unlawful on the basis that the state's notice of intent to seek an enhanced sentence was insufficient. (DE# 14; Ex. 6). The trial court summarily denied the motion, finding the claim procedurally barred from review and/or meritless. (DE# 14; Ex. 7. Rudolph took no appeal from the trial court's ruling, and instead immediately filed a pro se motion pursuant to Fla.R.Crim.P. 3.850, challenging his habitual offender sentence on the identical ground raised in the prior Rule 3.800 motion. (DE# 14; Ex. 8). The trial court summarily denied the motion, finding it successive. (DE# 14; Ex. 9). Rudolph prosecuted an appeal from the trial court's ruling (DE# 14; Ex. 10), and the appellate court affirmed the denial of postconviction relief in a *per curiam* decision without written opinion. (DE# 14; Ex. 11). See also Rudolph v. State, 912 So. 2d 1231 (Fla. 2 DCA 2005).

While the appellate proceeding was pending, Rudolph filed a second pro se Rule 3.850, challenging his conviction and sentence

---

[3]Appellate counsel raised the following issue, verbatim: Did the trial court err in denying appellant's motion for judgment of acquittal in which he alleged that the evidence adduced was insufficient to establish that he knew of the items he tried to sell were, in fact, stolen? (Initial (Anders) Brief of Appellant)(DE# 14; Ex. 1).

on four enumerated grounds of ineffective assistance of trial counsel. (DE# 14; Ex. 13). Counsel was appointed to represent Rudolph in the postconviction proceeding, and counsel filed an amended motion, restating the claims as follows: (1) trial counsel was ineffective for failing to investigate potential exculpatory witnesses and evidence; (2) counsel was ineffective for failing to interview and call four material witnesses to testify, who were known to counsel before trial; (3) counsel was ineffective for failing to object to inadmissable hearsay and for erroneously eliciting inadmissable hearsay, which prejudiced Rudolph; and (4) counsel was ineffective for allowing the court to impose a fine as part of his sentence when he was sentenced as a habitual felony offender. In its written order on the amended motion, the trial court summarily denied grounds one and four, finding that Rudolph had failed to demonstrate that he received ineffective assistance of trial counsel pursuant to the standard established in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) as to ground one, and that ground four had been improperly raised in a Rule 3.850 motion and should have instead been presented in a Rule 3.800 motion. <u>See</u> Order Denying in Part Defendant's Amended Motion for Postconviction Relief and Order for State to Respond at 1-2)(DE# 14; Ex. 15). As to grounds two and three, the trial court ordered a response from the state. <u>Id</u>. at 2. The state filed a response, conceding that an evidentiary hearing was warranted on grounds two and three. (DE# 14; Ex. 17).

An evidentiary hearing was conducted during which the following witnesses testified: Rudolph; investigating and arresting officers Sergeant Shaun Casey and Lieutenant Kenny Johnson; and former trial counsel Rhonda Whittaker. <u>See</u> Transcript of Post-Conviction Relief Proceedings conducted on August 4, 2006. (DE# 14; Ex. 17). After the testimony had been presented and the argument of

counsel made, the trial court announced on the record its denial of ground two. Id. at 111-15. After hearing additional argument from counsel as to ground three, the trial court reserved ruling as to that claim, indicating that it first needed to review pertinent portions of the trial transcript. Id. at 115-27. In a subsequent written order, the trial court denied Rudolph relief as to ground three. (DE# 14; Ex. 18). Rudolph appealed the trial court rulings (DE# 14; Ex. 19), and the Florida Second District Court of Appeal issued a written opinion affirming the denial of relief as to grounds one, two and three of the amended Rule 3.850 motion without discussion, but reversed the summary denial as to ground four regarding the imposition of a fine that was not authorized under the habitual offender statute. (DE# 14; Ex. 22). See also Rudolph v. State, 968 So. 2d 633 (Fla. 2 DCA 2007). Not long after the mandate had issued and Rudolph's motion for rehearing denied, the trial court struck the $200.00 fine from Rudolph's written judgment and sentence. (DE# 14; Ex. 23, 25). Within a couple of months after the conclusion of all state court proceedings, Rudolph came to this Court, filing the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.

## IV. <u>Threshold Issues-Timeliness, Exhaustion and Bar</u>

The respondent correctly does not challenge the timeliness of this petition, <u>see</u> 28 U.S.C. §2244(d), and has further conceded that claims one, two and three of this federal petition have been properly exhausted before the state courts. <u>See</u> 28 U.S.C. §2254(b)(1) and (b)(1)(A) (A state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the

State....").[4]  Rudolph  is,  therefore,  entitled  to  review  on  the
merits  of  the  claims  raised  here  as  grounds  one,  two  and  three.
Review  on  the  merits  of  ground  four  is,  however,  not  warranted  in
that  the  claim  is  unexhausted  and  procedurally  barred  from  federal
habeas  corpus  review  and/or  not  cognizable  in  this  federal  habeas
corpus  proceeding  for  the  reasons  indicated  below.[5]

## V.  Standard of Review

Petitioner  filed  his  petition  after  April  24,  1996,  the
effective  date  of  the  Antiterrorism  and  Effective  Death  Penalty  Act
of  1996  (AEDPA),  Pub.L.  No.  104-132,  110  Stat.  1214  (1996).
Consequently,  post-AEDPA  law  governs  this  action.  Abdul-Kabir v.
Quarterman,  550  U.S.  233,  127  S.Ct.  1654,  1664,  167  L.Ed.2d  585
(2007);  Penry v. Johnson,  532  U.S.  782,  792,  121  S.Ct.  1910,  150
L.Ed.2d  9  (2001);  Davis v. Jones,  506  F.3d  1325,  1331,  n .9  (11

---

[4]An  applicant's  federal  writ  of  habeas  corpus  will  not  be  granted  unless
the  applicant  exhausted  his  state  court  remedies.  28  U.S.C.  §2254(b),(c).  A  claim
must  be  presented  to  the  highest  court  of  the  state  to  satisfy  the  exhaustion  of
state  court  remedies  requirement.  O'Sullivan v. Boerckel,  526  U.S.  838  (1999);
Richardson v. Procunier,  762  F.2d  429,  430  (5  Cir.  1985);  Carter v. Estelle,  677
F.2d  427,  443  (5  Cir.  1982),  cert.  denied,  460  U.S.  1056  (1983).  A  petitioner  is
required  to  present  his  claims  to  the  state  courts  such  that  they  are  permitted
the  "opportunity  to  apply  controlling  legal  principles  to  the  facts  bearing  upon
[his]  constitutional  claim."  Picard v. Connor,  404  U.S.  270-275-77  (1971).
Exhaustion  is  ordinarily  accomplished  on  direct  appeal.  If  not,  in  Florida,  it
may  be  accomplished  by  the  filing  of  a  Rule  3.850  motion,  and  an  appeal  from  its
denial;  Leonard v. Wainwright,  601  F.2d  807,  808  (5  Cir.  1979),  or,  in  the  case
of  a  challenge  to  a  sentence,  by  the  filing  of  a  Rule  3.800  motion,  and  an  appeal
from  its  denial.  See  Caraballo v. State,  805  So.2d  882  (Fla.  2  DCA  2001)

[5]Before  addressing  the  claims  presented,  the  respondent  first  argues  that
§104(b)  of  the  AEDPA  constitutes  a  procedural  bar  to  consideration  of  all  of
Rudolph's  claims,  including  the  exhausted  claims.  By  its  plain  language  as  well
as  pursuant  to  the  applicable  authorities  cited  herein,  §104(b)  mandates  the
utilization  of  a  new  and  significantly  stricter  standard  of  review  in  federal
habeas  corpus  cases,  but  it  does  not  dictate  that  such  claims  may  not  be
considered  on  the  merits  at  all.  Although  this  Court  has  repeatedly  denounced
such  a  position  held  by  certain  offices  of  the  Attorney  General,  most  often  the
West  Palm  Beach  office,  this  position  continues  to  be  erroneously  advanced.  The
respondent's  interpretation  of  the  statute  is  mistaken  and  has  been  repeatedly
rejected  by  the  undersigned  in  earlier  reports  as  specious.  See,  e.g.,  Olden v.
Crosby,  Case  No.  03-61612-Civ-Cohn;  Davis v. Crosby,  Case  No.  03-60104.

Cir. 2007). Under AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11 Cir. 2002)." Stewart v. Sec. Dept. of Corrections, 476 F.3d 1193, 1208 (11 Cir. 2007). See also Parker v. Sec.Dept.of Corrections, 331 F.3d 764 (11 Cir. 2003). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

Where a petitioner's claim(s) raises a federal question, see 28 U.S.C. §2254(a)("a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"), was exhausted, is not procedurally barred, and was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision. See e.g., Ferguson v. Culliver, 527 F.3d 1144, 1146 (11 Cir. 2008). Pursuant to 28 U.S.C. §2254(d), habeas relief is available only in cases where the claims were adjudicated on the merits and the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in state court." Crowe v. Hall, 490 F.3d 840, 844 (11 Cir. 2007), cert. denied, ____ U.S. ____, 128 S.Ct. 2053 (April 21, 2008). Clearly established federal law embraces "the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision." Stewart v. Sec'y, Dep't of Corrs., 476 F.3d 1193, 1208 (11 Cir. 2007). Further, a decision is

"contrary to" established law if (1) the state court arrived at an opposite conclusion on a question of law as interpreted by the Supreme Court or (2) the court arrived at a different result when confronted with "materially indistinguishable" facts from relevant Supreme Court precedent. Jennings v. McDonough, 490 F.3d 1230, 1236 (11 Cir. 2007), *cert. denied*, U.S. ___, 122 S.Ct. 846 (2008). An application of established law is unreasonable "if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context." Id.

   "[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(*quoting* Early v. Packer, 537 U.S. 3, 7-8 (2002). Even where a state court denies an application for post-conviction relief without written opinion, that decision constitutes an "adjudication on the merits," and is thus entitled to the same deference as if the state court had entered written findings to support its decision. See Wright v. Sec. of Dep't of Corr., 278 F.3d 1245, 1255 (11 Cir. 2002). Moreover, findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Crowe v. Hall, 490 F.3d at 844.

## VI. Facts

   In brief, the facts of this case are as follow.[6] Alan

----

[6]For a more detailed recitation of the facts of the case, see the initial brief filed on direct appeal with citations to the trial transcript. (Initial (Anders) Brief of Appellant at 2-6)(DE# 14; Ex. 1). The trial transcript can be found at DE# 14; Ex. 26.

Smithline (a/k/a "Smitty") was with his Bass Fishing Club at the
Ramada Inn in Lake Placid, Florida. Around 5:00 A.M., Smitty placed
his fishing rods in the boat that was parked outside his hotel
room, and he then returned to his room to get his tackle box. When
he went back to the boat, the rods were gone. Smitty testified that
the six rods were worth approximately $800.00 to $1,000.00. After
notifying the police, Smitty decided to proceed with his fishing
trip with his friends. Approximately thirty minutes after
discovering that his rods were missing, the club members started
the morning with a trip to the nearby gasoline station and
convenience store. At the station, Smitty's friends Philip Luney
and Henry Alexander encountered Rudolph who was trying to sell
Smitty's rods for up to $150.00. As Rudolph was attempting to make
a sale, James Francis was sitting outside in a parked van, waiting
for Rudolph. The police were called and Rudolph and Francis were
questioned and both were ultimately arrested.

The defense at trial was that Rudolph was not involved in the
theft of the fishing rods, was not involved in the burglary, and
had no knowledge that the rods had been stolen. Rudolph claimed
that he had simply been assisting a friend, Francis. In support of
the defense, Rudolph testified in his own behalf at trial that the
fishing rods were not his, he did not know the origin of the
fishing rods, and he did not know that the rods had been stolen.
Rudolph further testified that Francis had the rods with him when
they met that morning, and he was selling the rods so that his
friend Francis could return to South Carolina.

## VII. <u>Discussion</u>

### A. <u>Ineffective Assistance of Trial Counsel</u>

Rudolph claims that he received ineffective assistance of
trial counsel for three enumerated reasons. To prevail on a claim

of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result.[7] <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

In ground one, Rudolph alleges that trial counsel improperly failed to object to inadmissible hearsay evidence and improperly elicited inadmissible hearsay evidence from the state witnesses. Specifically, he asserts that counsel failed to investigate and subpoena James Francis, and improperly elicited prejudicial hearsay testimony during his cross-examination of Philip Luney. Rudolph maintains that Luney said that he had learned from Francis that Rudolph had stolen the fishing equipment and, since Francis did not testify at trial, Francis was not subject to cross-examination.[8]

---

[7]When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Chandler v. United States</u>, 218 F.3d 1305 (11 Cir. 2000)(en banc), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1322 (11 Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), <u>quoting</u>, <u>Strickland v. Washington</u>, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466 U.S. at 698.

[8]It appears that Rudolph in his reply may be attempting to raise for the first time a claim that counsel should have objected to the subject hearsay evidence on the basis of a violation of his rights pursuant to the Confrontation Clause. <u>See</u> Response to Respondent Order to Show Cause at 15-6, *citing*, <u>Crawford v. Washington</u>, 541 U.S. 36 (2004). (DE# 17). The Confrontation Clause of the Sixth Amendment affords the accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The primary purpose of the Confrontation Clause is to prevent out-of-court statements from being used against a criminal defendant in lieu of in-court testimony subject to the scrutiny of cross-examination. <u>See</u> <u>Douglas v. Alabama</u>, 380 U.S. 415, 418-19 (1965). The Sixth Amendment's Confrontation Clause is applicable in state criminal trials via the Fourteenth Amendment. <u>See</u> <u>Douglas v. Alabama</u>, 380 U.S. 415, 418, (1965); <u>Pointer v. Texas</u>, 380 U.S. 400, 404 (1965). In *Crawford*, the

This claim is meritless, as correctly determined by the state courts in the Rule 3.850 proceeding.

Rudolph essentially raised the identical claim in his amended Rule 3.850 that trial counsel improperly solicited hearsay testimony from Henry Alexander and Phillip Luney and improperly failed to object to certain hearsay testimony.[9] The trial court conducted an evidentiary hearing on the claim during which former trial counsel Rhonda Whittaker testified. See Transcript of Post-Conviction Relief Proceedings conducted on August 4, 2006, at 23-60. (DE# 14; Ex. 17). Subsequent to the hearing, the trial court issued a thorough and well-reasoned written order, denying relief on the claim. See Order Denying Defendant's Ground C in the Defendant's Amended Motion for Postconviction Relief. (DE# 14; Ex. 18). The trial court concluded that the complained-of testimony was indeed hearsay and objectionable, but did not conclude that trial counsel should have lodged objections to the statements. Id. The court further found that even if counsel should have objected to

---

United States Supreme Court held that the Confrontation Clause bars the admission of "testimonial statements of witnesses absent from trial" unless the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant. Crawford, 541 U.S. at 59. Leaving aside the issues of exhaustion and procedural bar, which if applied appear to render any such claim unreviewable, Rudolph's claim is nonetheless unavailing. Rudolph's trial proceedings took place in October 2003, before Crawford had been decided. The courts have generally held that an attorney's failure to anticipate changes in the law does not render his performance ineffective. See Strickland v. Washington, 466 U.S. 668, 689 (1984)(stating that in judging counsel's alleged deficient performance, "every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."); United States v. Ardley, 273 F.3d 991, 993 (11 Cir. 2001)("In this circuit, we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel.")(Carnes, J., concurring)(cases cited omitted), denying rehearing en banc in, United States v. Ardley, 242 F.3d 989, (11 Cir.2001), cert. denied, 535 U.S. 979 (2002). More specifically as to Crawford, the courts have held that it could not have been error for trial counsel to fail to foresee that Crawford would be decided. See e.g., Love v. Dretke, 416 F.3d 372, 379-80 (5 Cir. 2005).

[9]The particular now-challenged statements can be found at pages 165 and 192-93 of the trial transcript.

the challenged testimony, Rudolph had not been prejudiced by counsel's failure to do so in that the statements were harmless in light of the other evidence admitted in the case and/or were elicited by counsel as a strategic decision to get James Francis, who could not be located and called as a defense witness, before the jury. Id. at 2.

In pertinent part, the trial court stated as follows in its order:

> The hearsay statement of Alexander is ambiguous at best. The evidence at trial and the hearing on [Rudolph's] motion showed that on the morning in question there were two persons outside, to wit: [Rudolph] and James Francis. There was no dispute by either side that Francis and [Rudolph] were together in the van. The statement of Luney by Alexander said in pertinent part:
>
>> "...have them call the police, they found the guy that stole Alan Smithline's rod..." (p.165).
>
> First, the hearsay statement does not specifically identify [Rudolph]. Secondly, Phillip Luney testified at the trial and was subject to cross examination by the defendant. He did identify the defendant at the trial as the person he saw with the rods on the day in question. Therefore, while the statement in question was technically hearsay, it was harmless not to object and consistent with [former trial counsel] Whittaker's trial tactic that not all objections should be made because some merely alienate a jury.
>
> As to Luney's hearsay statement (p. 192) attributed to the other gentlemen in the van (Mr. Francis), the court finds it is harmless for three reasons. First, it is clear that the defendant wanted the testimony of James Francis before the jury. We know that from the testimony of [former trial counsel] Whittaker, the hearing testimony of the defendant, and ground B of the defendant's motion. Whittaker made significant efforts to locate Francis for trial and even motioned the court on one or more occasions for a continuance to attempt to locate Francis. Francis could not be found. The context and series of other questions suggest that Whittaker was attempting through Luney to get before the jury the inconsistent statements made by Francis that she could not get from Francis himself (albeit it is legally doubtful she could have called Francis solely for the purpose of impeaching him). This is corroborated by her later question:

"You said you had a discussion with Mr. Francis, with the other gentleman that was in the van, after the police arrived or that you overheard the discussion he was having with the police?"

His answer was:

"No, I did not overhear the discussion with the police...".

Whittaker's tactic obviously failed because the witness either did not overhear the conversation with the police or did not remember it.

Id. at 2-3.

In arriving at its conclusion that the admission of the now-challenged hearsay statements were harmless, the trial court viewed the statements in light of the other properly admitted evidence presented by the state, which evidence the court summarized as follows:

1) [Rudolph] was trying to sell stolen rods; 2) the rods were reported stolen within ten to twenty minutes of the defendant being discovered by the fishing club members; 3) the defendant was offering them for sale for substantially below their fair market value (fair market value new would be about $800 and used about $50-$75 each times six or seven) initially at $150, then offering to accept $60 and then stating "give me what you have"; 4) the defendant became very nervous and fidgety when confronted by club members; 5) the defendant initially claimed to Alexander he found the rods ([trial transcript] page 166); 6) the defendant made an attempt to leave the scene, but was blocked from doing so; 7) the defendant was selling the rods between 5:15 and 5:30 a.m., a time described by Luney as not normal for sale; 8) the defendant claimed to be helping to sell them for a friend to get back to [South] Carolina.

Id. at 3. The court also aptly noted that the jury found Rudolph not guilty of grand theft and burglary, thereby, rejecting Rudolph's participation in the original theft of the rods and burglary of the vehicle from which they were taken. Id.

The state courts properly found that Rudolph had failed to

13

satisfy either prong, let alone both prongs, of the *Strickland*-
standard. Moreover, Rudolph's apparent assertion in this federal
proceeding that his trial was in someway rendered fundamentally
unfair in that he never consented to counsel's actions that
resulted in the admission of the now-challenged evidence and/or
waive his objections to the evidence is frivolous. The decision to
cross-examine a witness and the manner in which it is conducted are
tactical decisions "well within the discretion of a defense
attorney." <u>Fugate v. Head</u>, 261 F.3d 1206, 1219 (11 Cir. 2001)
(*quoting* <u>Messer v. Kemp</u>, 760 F.2d 1080, 1090 (11 Cir.1985)).
Strategic choices made after thorough investigation of the law and
facts relevant to plausible options are virtually unchallengeable.
<u>Strickland</u>, 466 U.S. at 690-91. Even if in retrospect the strategy
to pursue one line of defense over another appears to have been
wrong, the decision will be held ineffective only if it was so
patently unreasonable that no competent attorney would have chosen
it. <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1145 (11 Cir. 1983).
Accordingly, tactical or strategic choices by counsel cannot
support a collateral claim of ineffective assistance. <u>United States
v. Costa</u>, 691 F.2d 1358 (11 Cir. 1982); <u>Coco v. United States</u>, 569
F.2d 367 (5 Cir. 1978). Counsel did not fall below the *Strickland*-
standard by employing a legitimate trial strategy, regardless of
the result for her client.

Moreover, as correctly concluded by the trial court,[10] even if
this Court were to find that counsel's performance could be deemed

_____

[10]In his reply, Rudolph's attacks the trial court's ruling with regard to
the subject hearsay as contradictory or otherwise erroneous. <u>See</u> Response to
Respondent Order to Show Cause at 12. (DE# 17). This Court rejects Rudolph's
argument. However, even if the trial court's ruling could be viewed as
inconsistent, the trial court's alternate basis for denying Rudolph
postconviction relief on his ineffective assistance of trial counsel claim is
correct. In other words, Rudolph cannot satisfy the prejudice prong of
*Strickland*, as correctly determined by the state trial court for the reasons
stated herein.

deficient for failing to challenge the subject hearsay testimony, Rudolph suffered no prejudice as a result.[11] Even without the hearsay testimony, Rudolph would have been convicted of the offense of dealing in stolen property based upon the otherwise properly admitted evidence, as reviewed above.[12] Since Rudolph cannot show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, he did not receive constitutionally ineffective assistance of counsel. See Strickland, supra. He is, therefore, not entitled to relief on ground one.

Rudolph alleges in ground two that lawyer improperly failed to call material witnesses to testify at trial, which witnesses were known to counsel before trial proceedings. In related ground three, Rudolph alleges that his lawyer failed to conduct an adequate investigation into the facts of the case and such an investigation would have revealed favorable evidence and witnesses. Specifically, Rudolph maintains that his lawyer should have located and/or called

---

[11]The court may decline to reach the performance prong of the ineffective assistance test if convinced that the prejudice prong cannot be satisfied. See Brown v. Head, 272 F.3d 1308, 1313 (11 Cir. 2001), cert. denied, 537 U.S. 978 (2002). The prejudice component of the *Strickland* test for ineffective assistance of counsel requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. at 693-94. It is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Id.

[12]Rudolph was convicted of violating Fla.Stat. §812.019. (West 2000). The statute defines dealing in stolen property as follows: "Any person who traffics in, or endeavors to traffic in, property that he or she knows or should know was stolen shall be guilty of a felony of the second degree." It is noted that on direct appeal, appellate counsel identified one arguable ground for relief, namely, the trial court erred in denying Rudolph's motion for judgment of acquittal in that the evidence was insufficient to establish that Rudolph knew that the items he tried to sell had in fact been stolen. (Initial (Anders) Brief of Appellant)(DE# 14; Ex. 1). As indicated herein, the Florida appellate court rejected the claim as meritless and affirmed the conviction. See Rudolph v. State, 892 So. 2d 487 (Fla. 2 DCA 2004).

the following witnesses at trial: James Francis; employees at the
Ramada Inn and nearby convenience store; Sergeant Casey and
Lieutenant Kenny Johnson; former trial counsel Rhonda Whittaker;
and Will Sholtz. As to prospective witness Sholtz, Rudolph states
that during the morning of the incident, he had been with his
friend Sholtz when Francis approached them and asked them whether
they would be interested in purchasing fishing rods. With regard to
favorable evidence, Rudolph contends that counsel should have
investigated possible video surveillance tape-recordings from the
motel and/or convenience store.

It is beyond dispute that effective assistance of counsel
embraces adequate pretrial investigation. See Strickland v.
Washington, 466 U.S. at 691 (stating that "counsel has a duty to
make reasonable investigations or to make a reasonable decision
that makes particular investigations unnecessary." See also McCoy
v. Newsome, 953 F.2d 1252, 1262-63 (11 Cir. 1992) and cases cited
therein. Accordingly, "[w]hen a lawyer fails to conduct a
substantial investigation into any of his client's plausible lines
of defense, the lawyer has failed to render effective assistance of
counsel." Id. at 1263, quoting, House v. Balkcom, 725 F.2d 608,
615, 617-18 (11 Cir.), cert. denied, 469 U.S. 870 (1984). Although
counsel has no absolute duty to investigate particular facts or a
certain line of defense, a complete failure to investigate may
constitute deficient performance of counsel in some circumstances.
See Crawford v. Head, 311 F.3d 1288, 1297 (11 Cir. 2002).

After hearing testimony of the witnesses and extensive
argument from counsel, the trial court on the record rejected the
claims as meritless. See Transcript of Post-Conviction Relief
Proceedings conducted on August 4, 2006, at 111-15. The trial court
provided its reasons for denial of relief, stating in pertinent

16

part as follows:

> There are some credibility issues to be resolved here. ...
> And, quite frankly, the Court resolves the credibility issue
> in the favor of [former trial counsel] Ms. Whittaker and
> against Mr. Rudolph.
>
> I find that Mr. Rudolph's testimony is not credible regarding
> his claim that he provided the witness, Mr. Sholtz, to the
> Public Defender's Office. There's no record in the file of
> that. There's no reason that Ms. Whittaker would not have
> investigated that had she been given that information. She
> made motions for continuances just to try to locate witnesses
> for Mr. Rudolph. She sent an investigator out just to try to
> locate witnesses for Mr. Rudolph.[13]
>
> And I have no doubt that had she been given the name of Mr.
> Sholtz that she would have made every effort to try to secure
> Mr. Sholtz's testimony.[14]
>
> And so, my finding is that as to witness Sholtz that the
> Public Defender's Office was not provided that witness. They
> didn't know about it. And therefore, Ms. Whittaker was not
> ineffective pertaining to that particular witness. And,
> frankly, even if she had been made available, it's debatable
> whether he would have been available. But with that being
> said, I don't have to get to that prong because I don't find
> that she knew about the witness. And she can't be ineffective
> for that which she doesn't know.
>
> As to the two deputies. [prosecutor] Mr. Castillo is legally
> correct, you can't call Deputy Sheriffs, contrary to Mr.
> Rudolph's desire and wish. I don't think there's any doubt
> that he wanted Ms. Whittaker to call those two witnesses. But
> you can't call deputies, or any witness for that matter, to
> elicit hearsay testimony to corroborate a Defendant's
> testimony if it's... if it's merely a recitation of statements
> the Defendant has previously made.
>
> The evidence of deputies... of the lieutenant, he's a
> lieutenant now, wasn't back then, but the evidence would not
> have been admissible there at that time. And, therefore, it

---

[13]Former trial counsel testified at the hearing as to her efforts to locate a woman identified by Rudolph as "Sara," and the clerk who had been working at the Farm Store the morning of the subject incident. See Transcript of Post-Conviction Relief Proceedings conducted on August 4, 2006, at 25-6.

[14]See Transcript of Post-Conviction Relief Proceedings conducted on August 4, 2006, at 27.

was not error for Ms. Whittaker not to call those two
witnesses.

As to Francis, Ms. Whittaker made considerable efforts to try
to find him. The witness was simply unavailable and could not
be called.[15] I don't think there's any question that Mr.
Rudolph wanted that witness to be called but the witness was
simply unavailable. The Public Defender's Office made all good
faith efforts they could to locate that witness and had the
trial continued one or more occasions to locate that witness,
and was simply unsuccessful. And that doesn't create a
deficiency on the part of the Public Defender's Office.

It's debatable, but we don't get that far, it's debatable
whether Mr. Francis' testimony would have been admissible.
Because the law is that you cannot call a witness simply for
the purpose of impeaching that witness. And so, it's debatable
whether even had he been available whether Ms. Whittaker could
have called Mr. Francis. But we don't get there. Because I'm
finding that the Public Defender made all due haste and
diligent effort to try to locate this witness and he  was
simply unavailable.

So, as to the first ground, I find that Ms. Whittaker and the
Public Defender's Office was not deficient in her performance.
And I reject that particular ground.

And I might add, parenthetically, Mr. Wilbur [Rudolph], had
you been... you had a right... when these officers approached
you you had a right to remain silent. You didn't have to say
a word to them. But you chose to give them information. And
had you given them truthful information when they initially
spoke to you, at least in terms of witness Sholtz, we wouldn't
even be here. Because had you given them the name, it would be
in a police report. And then had Ms. Whittaker failed to
interview the witness, then you would have... then you would
have something to fuss about. Something to argue about.

But the evidence is clear, you didn't provide the name Sholtz
to either of the police officers.[16] And had you done that,

_____

[15]Former trial counsel also testified at the postconviction hearing as to
her unsuccessful efforts to locate Francis. See Transcript of Post-Conviction
Relief Proceedings conducted on August 4, 2006, at 25.

[16]Sergeant Casey testified during the evidentiary hearing that when he met
Rudolph at the convenience store, Rudolph told him that he was trying to sell
fishing rods for Francis. See Transcript of Post-Conviction Relief Proceedings
conducted on August 4, 2006, at 8-9. The officer testified that when he
questioned Francis, Francis first stated that when he picked up Rudolph who had
been standing on the side of the road, Rudolph was in possession of the rods. Id.
Francis stated that he then drove Rudolph to the Farm Store to sell the fishing
rods. Id. at 9. During a later interview, Francis stated that he had been with

perhaps the outcome here today might be different. And that is a consideration, your lack of candor with the police.[17] Obviously, your prior history,[18] which is impeachable in making a decision in terms of credibility here today.

Id.

Thus, after listening to testimony from former trial counsel and the other witnesses at the evidentiary hearing, which included Rudolph, the trial court expressly found Rudolph's assertion that he had provided trial counsel with the name and whereabouts of prospective witness Sholtz and/or any other witness not credible while finding the testimony of the other witnesses, especially former trial counsel, credible. Determinations of credibility are best made by the trial court judge who can assess the demeanor and candor of the witnesses. Gore v. Secretary for Dept. of Corrections, 492 F.3d 1273, 1300 (11 Cir. 2007)(noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review), citing, Rice v. Collins, 546 U.S. 333, 341-42 (2006)(stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility

---

Rudolph at the Ramada Inn, and it was there that Rudolph had obtained the rods and they both went to the Farm Store to sell them. Id. Sergeant Casey testified that after Rudolph had been arrested, Rudolph provided no names whatever as possible witnesses, and the only witnesses the officer listed in the report were those at the scene: Luney, Smithline, Alexander, and Francis. Id. at 12-14. Lieutenant Johnson similarly testified regarding the information provided by Rudolph and Francis when they were interviewed about the subject offenses, and that Rudolph had provided no information regarding additional witnesses. Id. at 17-23.

[17]When asked during the evidentiary hearing why he had not told the officers about Sholtz, he answered: "Ma'am, at that time, ma'am, it didn't cross my mind, ma'am." See Transcript of Post-Conviction Relief Proceedings conducted on August 4, 2006, at 75.

[18]Rudolph had been convicted of at least thirteen prior felonies at the time of trial. See Transcript of Post-Conviction Relief Proceedings conducted on August 4, 2006, at 78.

determination"). <u>See also</u> <u>Baldwin v. Johnson</u> 152 F.3d 1304, 1317 (11 Cir. 1998), <u>citing</u>, <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983)("Title 28 U.S.C. §2254(d) gives federal habeas [corpus] courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); <u>Smith v. Kemp</u>, 715 F.2d 1459, 1465 (11th Cir.)("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing."), <u>cert</u>. <u>denied</u>, 464 U.S. 1003 (1983).

Thorough review of the record in this case yields no suggestion that the trial court's findings of fact made during the state postconviction proceeding where the subject issues were raised were not supported by the record or were otherwise deficient. Because Rudolph has not rebutted the trial court's findings of fact by clear and convincing evidence, the findings are presumed correct.[19] <u>See</u> 28 U.S.C. §2254(e)(1). Based upon the court's findings and credibility determinations, the trial court properly ruled that Rudolph was not entitled to postconviction relief in that counsel's performance had not been constitutionally ineffective, as alleged in grounds two and three of the instant petition.

It is evident from the record that trial counsel did properly investigate the facts of the case and possible known witnesses,

---

[19]Federal courts in habeas corpus proceedings are required to grant a presumption of correctness to state court's explicit and implicit findings of fact, if supported by the record. 28 U.S.C. §2254(e)(1). <u>See also</u> <u>Green v. Johnson</u>, 160 F.3d 1029, 1045 (5 Cir. 1998), <u>cert</u>. <u>denied</u>, 525 U.S. 1174 (1999). If it is clear that the trial court would have granted the relief sought by the petitioner had it believed the testimony of certain witnesses, "its failure to grant relief was tantamount to an express finding against the credibility of [those witnesses]." <u>Marshall v. Lonberger</u>, 459 U.S. 422, 433 (1983), <u>citing</u>, <u>LaVallee v. Delle Rose</u>, 410 U.S. 690 (1973).

contrary to Rudolph's assertion. Counsel went to great lengths to locate various witnesses, albeit unsuccessfully. Further, which witnesses to call is a strategy decision that should seldom be second guessed. Conklin v. Schofield, 366 F. 3d 1193, 1204 (11 Cir. 2004), *cert. denied*, 544 U. S. 952 (2005). As to the arresting officers, it is apparent that trial counsel made the strategic decision not to call the officers as defense witnesses at trial. Trial counsel, instead, called Rudolph as a witness to testify in his own behalf as to his version of the events, which was essentially that he had not stolen the rods, had no knowledge that the rods had been stolen, and was selling the rods on behalf of his friend Francis. In support of the defense presented that Francis was the true perpetrator of the crimes, trial counsel during cross-examination was able to apprise the jury of the presence of a second individual, Francis, who had been seen waiting outside for Rudolph in a parked van.

Trial counsel's strategy was reasonable under the circumstances of the case in that if the officers had been called as defense witnesses to testify, their testimony would have had the possibility of implicating Rudolph as the perpetrator of the subject offenses, because the officers had statements from Francis indicating that it was Rudolph who stole the fishing rods. See Arrest Report at 2;[20] Transcript of Post-Conviction Relief Proceedings conducted on August 4, 2006, at 6-15, 15-23. While Francis' statements to the police may be deemed inconsistent in part, the inconsistencies were not material. Francis at all times denied stealing the rods, and told the officers that it was Rudolph who had the rods in his possession. Id. As to the argument that the officers should have been called as defense witnesses for the

---

[20]A copy of the arrest report is included as part of the record on direct appeal and can be found in DE# 14; Ex. 26, Vol I.

alternate purpose of testifying as to Rudolph's statements that he had not stolen the fishing gear and that Francis had been the perpetrator, review of the testimony at the postconviction hearing from former trial counsel and argument by counsel for the state, it appears that the witnesses were not called for this purpose in that the testimony may have been excluded as improper hearsay based upon Florida law. See Transcript of Post-Conviction Relief Proceedings conducted on August 4, 2006, at 44-7, 105. In Florida, at the time of the trial proceedings, a defendant's out-of-court exculpatory statements were inadmissible hearsay. See Cotton v. State, 763 So.2d 437, 439 (Fla. 4 DCA 2000)("When a defendant seeks to introduce his own out-of-court exculpatory statement for the truth of the matter stated, it is inadmissible hearsay."). Accordingly, failure to call the officers was not so patently unreasonable a strategic decision that no competent attorney would have chosen the strategy. Counsel's performance was, therefore, not constitutionally ineffective. See Strickland, supra.

As to prospective witness Sholtz and unnamed and unidentified employees of the motel and/or convenience store, counsel's performance also cannot be deemed constitutionally ineffective. Speculation about what witnesses could have said is not enough to establish prejudice under Strickland. See generally Grisby v. Blodgett, 130 F.3d 365, 373 (9 Cir. 1997). See also White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."). The same can be said as to witness Francis, even if he could have been located. Also, as indicated, it appears that his testimony had the potential of being harmful, rather than exculpatory. Finally, as to counsel's deficient performance for failure to obtain surveillance videotapes or other possible exculpatory evidence, such a claim is wholly

conclusory. There is no evidence in the record whatever that any such tape-recordings existed and, if so, that they would be exculpatory. Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11 Cir. 1991)(recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'"). See also Ross v. Estelle, 694 F.2d 1008, 1011-12 (5 Cir. 1983). Even if counsel's performance can be deemed deficient for any or all the reasons alleged in grounds two and three, Rudolph cannot demonstrate that he was prejudiced as a result of the alleged deficiencies.[21] The absence of exculpatory witness testimony from a defense and/or evidence is more likely prejudicial when a conviction is based on little record evidence of guilt. Fortenberry v. Haley, 297 F.3d 1213, 1228 (11 Cir. 2002)(rejecting petitioner's ineffective assistance of counsel argument on lack of prejudice grounds despite "no conclusive forensic or eyewitness evidence" because of petitioner's "multiple uncoerced confessions"). That is not the situation here.

In conclusion, it is clear from the record when viewed as a whole that the petitioner received vigorous representation more than adequate under the Sixth Amendment standard. See Strickland v. Washington, 466 U.S. 668 (1984). Defense counsel made a reasonable investigation of the facts, was well-prepared for trial, conducted full and extensive cross-examination of the state's witnesses, made

---

[21]This court notes that during the postconviction proceeding Rudolph did not call Francis or Sholtz as witnesses and no exculpatory evidence, such as surveillance tape-recordings, was admitted into evidence at the hearing.

appropriate objections, presented defense evidence in the form of
Rudolph's testimony, moved for judgment of acquittal, and presented
a forceful and compelling closing argument. Rudolph has failed to
demonstrate that he was deprived of constitutionally effective
assistance of counsel for any or all of the reasons alleged above.
Moreover, contrary to Rudolph's apparent assertion, the result of
the trial was not fundamentally unfair or unreliable. See Lockhart
v. Fretwell, 506 U.S. 364, 369-70 (1993). It certainly cannot be
overlooked that through the efforts of defense counsel, Rudolph was
found not guilty of the offenses of burglary of a conveyance and
grand theft, two of the three crimes charged. The fact that he did
not receive a full acquittal does not mean that counsel's
performance was constitutionally ineffective. Defense counsel
clearly subjected the prosecution's case to meaningful adversarial
testing.[22] See United States v. Cronic, 466 U.S. 648, 659 (1984).

Accordingly, the trial court's determination that Rudolph was
not entitled to postconviction relief on the identical claims of
ineffective assistance of trial counsel raised in this federal
proceeding, which decision was affirmed on appeal, see Rudolph v.
State, 968 So. 2d 633 (Fla. 2 DCA 2007), was not in conflict with
clearly established federal law or based on an unreasonable
determination of the facts in light of the evidence presented in
the state court proceeding. Relief must therefore be denied

---

[22]It appears that Rudolph might be attempting to raise a claim pursuant to
United States v. Cronic, 466 U.S. 648 (1984). In some cases, counsel's failure
or inability to subject the prosecution's case to meaningful adversarial testing
violates the Sixth Amendment and makes the adversarial process presumptively
unreliable. Id. at 659. When such a violation occurs, so as to render the trial
presumptively unreasonable, no specific showing of prejudice is required. Id.
The Eleventh Circuit applies the *Cronic* dicta only in a "narrow range of cases"
where there is a "fundamental breakdown of the adversarial process," Chadwick v.
Green, 740 F.2d 897, 900-01 (11 Cir. 1984), and concentrates instead on whether
or not the accused was denied a fair trial. Hammonds v. Newsome, 816 F.2d 611,
613 (11 Cir. 1987). In this case, Rudolph was in no way denied a fair trial. As
indicated herein, the record demonstrates that counsel subjected the state's case
to a meaningful challenge.

pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

B. <u>Trial Court Error</u>

Rudolph claims in ground four that the trial court erred when it permitted an out-of-court statement by a witness that Rudolph had stolen a fishing rod, because there was no predicate laid that the witness had personal knowledge about the matter. It appears from review of the record as a whole that Rudolph is challenging testimony from Luney regarding statements made by Francis that Rudolph had stolen the rods.

As correctly asserted by the respondent, this claim is unexhausted and prospectively procedurally barred from federal habeas corpus review in that Rudolph never raised such a claim in the state appellate court on direct review where it could and should have been raised. Since there are no procedural avenues available to Rudolph to now exhaust the allegedly improper admission of testimony at the state level, the claim would be procedurally barred under Florida law.[23] Because claim four is now irrevocably barred from consideration by the state courts, this Court may deem the claim procedurally barred as well.[24] <u>Kelley v. Secretary for Dept. of Corr</u>., 377 F.3d 1317, 1351 (11 Cir. 2004)("[W]hen it is obvious that the unexhausted claims would be

---

[23]In Florida, issues which could be but are not raised on direct appeal may not be the subject of a subsequent Rule 3.850 motion for postconviction relief. <u>Kennedy v. State</u>, 547 F.2d 912 (Fla. 1989). Because Rudolph should have raised the subject claim first in the trial court and then on direct appeal, he is precluded from doing so collaterally in a Rule 3.850 motion.

[24]A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302-03 (11 Cir. 1999).

procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.")(internal quotation marks omitted).

While Rudolph is apparently asserting in this federal proceeding that he should be excused from the procedural default because the default was due to appellate counsel's failure to raise the subject claim on direct appeal, such argument would be unavailing. The claim of ineffective assistance of counsel may constitute cause for a procedural default; see Murray v. Carrier, 477 U.S. 478 (1986), except when the ineffective assistance of counsel claim itself has been procedurally defaulted. See Edwards v. Carpenter, 529 U.S. 446, 453 (2000). In Florida, a claim of ineffective assistance of appellate counsel is presented by way of a state petition for writ of habeas corpus filed in the appropriate state appellate court. State v. Dist. Ct. of Appeal, First Dist., 569 So. 2d. 439 (Fla. 1990). Rudolph has not pursued such a state petition. Thus, the ineffective assistance of appellate counsel claim is itself unexhausted and procedurally barred from state review in that Rudolph cannot now return to state court to pursue the ineffective assistance of appellate counsel claim. See Fla.R.App.P. 9.141(c)(4)(B)(stating that "[a] petition alleging ineffective assistance of appellate counsel shall not be filed more than 2 years after the conviction becomes final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel.") Since Rudolph cannot demonstrate objective cause for the failure to properly raise the claim in the state courts and actual prejudice resulting from the error complained of, he cannot overcome the procedural default. See O'Sullivan v. Boerckel, 526

U.S. 838, 848-49 (1999); <u>Coleman v. Thompson</u>, 501 U.S. 722, 750-51 (1991); <u>United States v. Frady</u>, 456 U.S. 152, 168 (1982); <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

Moreover, application of the bar is appropriate in this case, because Rudolph has not established that a fundamental miscarriage of justice will result from application of the bar. In other words, he has not shown that he is actually innocent of the crime for which he was convicted. <u>See</u> <u>House v. Bell</u>, 547 U.S. 518 (2006); <u>Dretke v. Haley</u>, 541 U.S. 386, 124 S.Ct. 1847 (2004). <u>See also</u> <u>Bousley v. United States</u>, 523 U.S. 614 (1998); <u>Schlup v. Delo</u>, 513 U.S. 298, 327-328 (1995). Rudolph has failed to meet the high standard of factual innocence in that he has come forward with no new reliable evidence to support any claim of actual innocence. Accordingly, Rudolph is not entitled to federal habeas corpus review on the merits of ground four of this federal petition. <u>See</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 848-49 (1999). <u>See also</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750-51 (1991); <u>United States v. Frady</u>, 456 U.S. 152, 168 (1982); <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

Even if the claim were not procedurally barred from federal habeas corpus review, Rudolph would not be entitled to review on the merits of his claim because the claim is not cognizable in this federal proceeding. Admission of the now-challenged testimony does not warrant federal habeas corpus relief. Federal courts will grant habeas corpus relief on the basis of a state evidentiary ruling only if the ruling adversely affects the fundamental fairness of the trial. <u>Sims v. Singletary</u>, 155 F.3d 1312 (11 Cir. 1998)(denying habeas corpus relief on a claim that a motion for mistrial was wrongfully denied). <u>See also</u> <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991); <u>Osborne v. Wainwright</u>, 720 F.2d 1237, 1238 (11 Cir. 1983);

Jameson v. Wainwright, 719 F.2d 1125 (11 Cir. 1983); DeBenedictus v. Wainwright, 674 F.2d 841, 843 (11 Cir. 1982). In general, federal courts are reluctant to second-guess state evidentiary rulings, recognizing that states deserve wide latitude in that area, Maness v. Wainwright, 512 F.2d 88, 92 (5 Cir. 1975), so federal habeas corpus relief is rarely deemed appropriate for claims predicated on allegations of state evidentiary error. Boykins v. Wainwright, 737 F.2d 1539, 1543-44 (11 Cir.), cert. denied, 470 U.S. 1059 (1985). Moreover, such evidentiary rulings are subject to the harmless error analysis and will support habeas relief only if the error "had substantial and injurious effect or influence in determining the jury's verdict." Sims v. Singletary, 155 F.3d at 1312, quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).

For the identical reasons discussed above with regard to ground one, Rudolph cannot demonstrate that the trial court's admission of the subject testimony was improper pursuant to state law or that he received a fundamentally fair trial by its admission. Further, in the process of reviewing the record to determine whether federal constitutional standards were violated in a habeas petitioner's underlying criminal case, the Court does not close its eyes to the reality of evidence of guilt fairly established in state court. Milton v. Wainwright, 407 U.S. 371, 377-78 (1971). See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). It is the responsibility of the jury to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. See Wilcox v. Ford, 813 F.2d 1140, 1143 (11 Cir. 1987), citing, Jackson v. Virginia, 443 U.S. 307, 326 (1979). As was the prerogative of the jury, it rejected the defense presented that Francis was in possession of the fishing rods when Rudolph encountered him and Rudolph was

28

merely trying to help Francis by selling the rods for him, and instead believed the strong evidence admitted by the state and the testimony of the state witnesses. This Court must defer to the jury's judgment as to the weight and credibility of the evidence. See Wilcox v. Ford, supra. Accordingly, even if the now-challenged testimony was improperly admitted for the reasons Rudolph contends or otherwise, when excluding the alleged improper testimony, the otherwise competent evidence admitted at trial as summarized above was more then sufficient to establish Rudolph's guilt of the crime for which he was convicted and negate his theory of defense. See Jackson v. Virginia, 443 U.S. 307 (1979).

## VIII. Evidentiary Hearing

Petitioner's request for an evidentiary hearing on any or all the claims raised in this federal petition should be denied. To be entitled to an evidentiary hearing on habeas claims, the petitioner must allege facts that, if proved at the hearing, would entitle him to relief. See Schriro v. Landrigan, 550 U.S. ___, ___, 127 S.Ct. 1933, 1940 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). For reasons discussed herein, an evidentiary hearing is not required for the disposition of this case. Id. See also Atwater v. Crosby, 451 F.3d 799, 812 (11 Cir. 2006)(addressing petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim."). Rudolph has failed to demonstrate the existence of any factual dispute that warrants a federal evidentiary hearing.

## IX. <u>Conclusion</u>

Based upon the foregoing, it is recommended that this petition for habeas corpus relief be denied.


Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 14th day of October, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Wilbur Rudolph, <u>Pro</u> <u>Se</u>
     DC# 762483
     Moore Haven Correctional Facility
     P. O. Box 718501
     1900 East State Road 78 NW
     Moore Haven, FL 33471

     Michele Taylor, AAG
     Office of the Attorney General
     Department of Legal Affairs
     3507 E. Frontage Road, Suite 200
     Tampa, FL 33607-7013